UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEDIAXPOSURE LIMITED
(CAYMAN),

      Plaintiff,

v.                                                             CASE No. 8:11-CV-410-T-TGW

KEVIN HARRINGTON,
TIMOTHY HARRINGTON, etc.,
et al.,

      Defendants.

_____

## O R D E R

The plaintiff alleges in this lawsuit that the defendants breached

their fiduciary duty to ResponzeTV PLC ("RETV"), which resulted in its

dissolution. Essentially, the plaintiff alleges defendants Kevin and Timothy

Harrington, former officers of RETV, misappropriated funds from RETV and

engaged in self-dealing, and that the other defendants failed to cooperate with

the investigation into the Harringtons' misconduct. Defendants Infusion

Brands International, Inc. ("Omni"), VICIS Capital Master Fund, and VICIS

Capital, LLC, move to dismiss the one-count amended complaint on the ground that it fails to state a claim against them.

Viewing the well-pled factual allegations in the light most favorable to the plaintiff, it has failed to state a cognizable claim that the corporate defendants owed a fiduciary duty to RETV. Therefore, Defendants VICIS Capital Master Fund and VICIS Capital, LLC's Dispositive Motion to Dismiss (Doc. 34) and Defendant, Omni's, Motion to Dismiss Amended Complaint (Doc. 36) will be granted.

I.

A. The plaintiff MediaXposure Limited (Cayman) is an investment company headquartered in the Cayman Islands which purchased from non-party RETV its "claims and rights against third parties" (Doc. 29, ¶5). RETV was a United Kingdom public company that sold various products through infomercials, and was traded on the Alternative Investment Market ("AIM") of the London Stock Exchange (see id., ¶4).

From January 2007 to July 2008, defendants Kevin Harrington and Timothy Harrington served as RETV directors, and as its Chief Executive Officer ("CEO") and Chief Operating Officer ("COO"), respectively (id., ¶¶

6, 7).[1] The Harringtons owned 25% of RETV shares, and controlled the day-to-day financial, personnel, and business operations of RETV during this time period (id., ¶¶ 6, 7, 14).

Defendant Omni, now known as Infusion Brands Int'l, Inc., is a publicly-held company based in Clearwater, Florida, that "engages in the creation, design, distribution and sale of affordable luxury products" (id., ¶8). The Harringtons were co-founders of Omni, on its board of directors, and each allegedly owned 10% of Omni shares (id., ¶¶ 6, 7, 15).

Omni had a 17% stake in RETV (id., ¶16). Omni stated in filings with the Securities and Exchange Commission that it had significant influence over RETV's operating and financial policies based on Omni's voting control and Omni's representation on RETV's board of directors (id., ¶17).

Omni was effectively controlled by defendant VICIS Capital Master Fund, which owns over 95% of Omni's common stock (id., ¶9). Defendant VICIS Capital LLC, is the investment advisor to VICIS Capital

[1]The Harringtons became officers and directors of RETV after RETV acquired Reliant International Media, LLC, from the Harringtons (Doc. 29, ¶14).

Master Fund and stated in public filings that it "may be deemed to beneficially own" VICIS Capital Master Fund's common stock of Omni (id., ¶10). Additionally, VICIS Capital owned 250,000 shares of RETV stock (id.). The VICIS companies are collectively referred to as "VICIS."

Non-party Chris Phillips was, at all relevant times, an Omni director (id., ¶20). Phillips also acted as Omni's interim CEO and Chief Financial Officer until January 2008, after which he became the managing director of VICIS (id.). RETV provided Phillips with "confidential unpublished financial, trading and business information" and "consulted [with Phillips] on several RETV deals" (id., ¶22). Further, RETV consulted with Phillips concerning stock incentive plans for RETV management, and Phillips introduced business contacts to RETV (id., ¶23).

B. On May 15, 2008, Nigel Harris, who was preparing to take over as RETV's CFO, told RETV's chairman Steven Goodman that he was suspicious about the Harringtons' personal expenditures, and expressed concern that the Harringtons had conflicts of interest and were underreporting product returns (id., ¶28). Goodman, under the authority of the independent directors of RETV, immediately commenced an investigation (id.).

Approximately two weeks earlier, on May 2, 2008, Phillips told Goodman during a telephone call that the Harringtons were "difficult to manage" (id., ¶27). Phillips stated that they "need watching" in connection with their personal expenditures, and that they often sought to structure deals so they received personal kickbacks (id.).

When RETV commenced its investigation, Goodman consulted with Phillips about the Harringtons' alleged misconduct (id., ¶30). On May 18, 2008, Goodman met with Harris and Phillips, during which Goodman described to Phillips the proposed investigation, the concerns that had been expressed to him, and the duty to investigate such concerns (id., ¶31). At that meeting, Phillips reiterated his own suspicions about the Harringtons (id.).

On May 19, 2008, Goodman met with the Harringtons regarding the investigation (id., ¶32). However, Timothy Harrington, and several employees believed to be connected with the Harringtons, refused to cooperate, and Kevin Harrington refused to relinquish his company-issued computer (id.).

On May 20, 2008, upon Goodman's request, another meeting was held regarding the investigation (id., ¶33). The meeting was attended by

Goodman, Phillips, Paul Morrison (then-Omni president and COO), and Richard Diamond (Omni director) (id.). The following day, Goodman requested Phillips, Diamond, and Morrison to come to RETV's offices for a third meeting regarding the investigation (id., ¶34). They declined to attend that meeting, but Phillips and Diamond invited Goodman to call them on their cellphones (id., ¶35).

Although Goodman's calls to Phillips's cellular telephone went unanswered, Goodman spoke with Diamond (id., ¶¶ 35, 36). Further, Goodman discussed with Diamond by e-mail a proposed meeting between Goodman, Diamond, and Phillips; however, that meeting did not occur (id., ¶¶ 36, 37). Ultimately, Diamond sent Goodman an e-mail, requesting that Goodman have RETV rescind a $2 million transaction that had been recently consummated between Omni and RETV, and stated that he had been advised by Omni's lawyers to have no further discussions with Goodman until Goodman "made public any material information" (id., ¶37).

On May 22, 2008, Goodman received an e-mail from Kevin Harrington, in which Harrington expressed his desire "to move forward and get RETV relisted," and that he would reimburse RETV for company funds

that he used for personal expenses (id., ¶¶ 39, 41).[2] On that day, RETV, upon advice of independent counsel, requested an immediate suspension in the trading of its shares on the AIM (id., ¶38).

RETV's investigation allegedly revealed that the Harringtons had engaged in improper spending of RETV funds after they became the CEO and COO of RETV (id., ¶¶ 26, 42). Thus, it was allegedly discovered that the Harringtons improperly claimed thousands of dollars of unreimburseable personal expenditures as business expenses, diverted payments to themselves that were supposed to go to RETV, and improperly structured contracts by agreeing to noncompetitive and inflated prices in exchange for kickbacks to them personally (id., ¶¶ 26, 29, 42).

The plaintiff alleges that Omni and VICIS failed to cooperate with the investigation or "require the Harringtons to cooperate" with the investigation (id., ¶43). Furthermore, the plaintiff claims that the corporate defendants continued communications with the Harringtons after suspension of RETV share trading, and that, in June 2008, Omni and the Harringtons

---

[2]Goodman also received an e-mail purportedly from Diamond regarding the investigation; however, that e-mail was sent by Harrington, and Diamond replied that Harrington had no authority to send the message on behalf of Omni (Doc. 29, ¶¶ 39, 40).

"stepped into RETV's business relationship with The Franklin Mint," without paying consideration therefore (id., ¶¶ 45, 46).

The plaintiff argues that the defendants' failure to cooperate with the investigation ultimately resulted in the dissolution of RETV. Thus, the plaintiff alleges that "[t]he 2007 audit of RETV was allegedly not completed because, as a result of the issues raised in the Investigation and the failure of the Harringtons to cooperate with the Investigation, the audit would require significant additional funds to complete, funds which RETV did not have" (id., ¶44). As a result of the failure to complete the 2007 audit, RETV was unable to satisfy the requirements of the AIM for lifting the trading suspension, leading to the permanent de-listing of trading on the AIM for RETV shares, and ultimately, the dissolution of RETV by the UK Companies Registry (id.). Consequently, RETV securities, which had a total value of $61 million dollars before the suspension, became worthless (id.).

C. On October 30, 2009, the plaintiff filed a complaint in the Supreme Court of the State of New York, County of New York, titled MediaXposure Limited (Cayman) v. OmniReliant Holdings, Inc., Kevin Harrington, Timothy Harrington, Chris Phillips, Richard Diamond, Paul

Morrison, Vicis Capital Master Fund and Vicis Capital , LLC, Index No. 603325/2009 (the "New York Action"). It alleged, among other things, that VICIS, Omni, and Phillips aided and abetted the Harringtons' fraudulent conduct and breaches of fiduciary duties to RETV (Doc. 34-1).[3]

On October 25, 2010, the Honorable Bernard J. Fried dismissed the plaintiff's lawsuit against Phillips, VICIS, and Omni for failure to state a claim for relief (Doc. 34-2, pp. 26, 28, 29[4]). Judge Fried stated that the plaintiff failed to plead adequately facts that demonstrated VICIS's and Omni's actual knowledge of the Harringtons' alleged fraud and breach of fiduciary duty, and that, with regard to the investigation, the complaint alleged only inaction on the part of Omni and VICIS, which does not state a claim for aiding and abetting (id., pp. 24-26).

The plaintiff sought leave in the New York court to file an amended complaint against Omni and VICIS (Doc. 37-3), which again alleged that they aided and abetted the Harringtons' breaches of fiduciary

---

[3]Courts may take judicial notice of filings in other cases "without converting ... a Motion to Dismiss into a motion for summary judgment." Horne v. Potter, 392 Fed. Appx. 800, 802 (11th Cir. 2010); see also Universal Express, Inc. v. United States Securities and Exchange Commission, 177 Fed. Appx. 52, 53-54 (11th Cir. 2006).

[4]Page numbers refer to the numbers assigned by the CM/ECF system.

duties by failing to cooperate with the investigation (id.; Doc. 34-4, p. 6). On June 28, 2011, Judge Fried denied the motion to amend (id., pp. 2, 18). Judge Fried explained that the plaintiff's aiding and abetting allegations were insufficient absent a contention that Omni and VICIS owed a fiduciary duty directly to RETV (id., p. 18). In this regard, Judge Fried noted that the "Plaintiff concede[d during the hearing] that Omni and Vicis do not directly owe any fiduciary duty to RETV (Hr'g Tr. 9:16-18)" (id., p. 6); see also id., p. 17 ("the Plaintiff even conceded during its oral argument that Omni and Vicis do not directly owe a fiduciary duty to RETV"). Judge Fried's orders were not appealed.

In February 2011, the plaintiff filed suit in this court. The plaintiff alleged in MediaXposure Limited (Cayman) v. Kevin Harrington, Timothy Harrington, Richard Diamond, and Chris Phillips, Case No. 8:11-CV-410-T-33TGW, that the Harringtons breached their fiduciary duty to RETV, and that Phillips and Diamond aided and abetted the Harringtons' breaches of fiduciary duty by failing to cooperate with the investigation (Doc. 1). After Phillips filed a motion to dismiss the complaint, the plaintiff filed a Notice of Voluntary Dismissal of Phillips and Diamond from this action (Docs. 18, 22, 26). The remaining parties–the plaintiff and the Harringtons

– then executed a consent to exercise jurisdiction by a magistrate judge (Doc. 28).

The plaintiff subsequently filed the amended complaint that is presently before the court. The plaintiff joined as defendants Omni and VICIS in a one-count claim for direct breach of fiduciary duty to RETV (Doc. 29). Specifically, the plaintiff alleges that, by virtue of Omni's and VICIS's ownership in RETV, and Phillips's consultations with RETV, a fiduciary relationship was created between RETV, on the one hand, and Omni and VICIS, on the other (id., p. 16). The plaintiff asserts that Omni and VICIS breached their fiduciary duties to RETV by (1) failing to cooperate with the investigation; (2) failing to direct the Harringtons to cooperate with the investigation; and (3) remaining in communication, and conducting business, with the Harringtons after RETV's shares were suspended (id., ¶51). These purported breaches allegedly led to RETV's permanent de-listing from the AIM, which rendered the RETV stock worthless (id.).

Omni and VICIS have filed motions to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., on the ground that the amended complaint fails to state a claim against them (Docs. 34, 36). Specifically, VICIS argues that the plaintiff has not alleged facts showing that it owed a fiduciary duty to RETV,

or that it breached any purported duty to RETV (Doc. 34, pp. 3-4). Omni similarly alleges that it did not have a fiduciary duty to RETV (Doc. 36, p. 2). Additionally, Omni argues that there were no damages caused by its purported breach, and that res judicata bars this claim (id.).

The plaintiff filed an omnibus memorandum in opposition to the motions, arguing that the totality of the circumstances sufficiently states a claim for relief (Doc. 39, p. 5). Further, it alleges that res judicata does not bar this claim because Judge Fried's dismissal of the New York action was not a final judgment on its merits (id., p. 6). Oral argument on the matter was subsequently held (Doc. 48). Omni and VICIS thereafter filed a consent to proceed before the magistrate judge (Doc. 50).

## II.

A complaint may be dismissed upon motion under Rule 12(b)(6), Fed.R.Civ.P., for "failure to state a claim upon which relief can be granted." The United States Supreme Court has retired the standard in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," in favor of a stricter pleading standard. Bell Atlantic Corp. v.

Twombly, 550 U.S. 544 (2007). Thus, although a complaint does not need detailed factual allegations, "a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Rather, factual allegations must be enough to "raise a right to relief above the speculative level," based on the assumption that the allegations are true (even if doubtful in fact). Id.

The Supreme Court has subsequently applied the Twombly plausibility standard in Ashcroft v. Iqbal, 556 U.S. 662 (2009). The Eleventh Circuit has explicated the following "working principles" of those two decisions in American Dental Association v. Cigna Corporation, 605 F.3d 1283, 1290 (11th Cir. 2010):

> First, the Court held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." [Ashcroft v. Iqbal, supra, 556 U.S. 662, 129 S.Ct. at 1949]. Second, restating the plausibility standard, the Court held that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). The Court suggested that courts considering motions to dismiss adopt a "two-pronged approach" in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly

give rise to an entitlement to relief." Id.
Importantly, the Court held in Iqbal, as it had in
Twombly, that courts may infer from the factual
allegations in the complaint "obvious alternative
explanation[s]," which suggest lawful conduct rather
than the unlawful conduct the plaintiff would ask the
court to infer. Id. at 1951-52 (quoting Twombly,
550 U.S. at 567, 127 S.Ct. at 1972). Finally, the
Court in Iqbal explicitly held that the Twombly
plausibility standard applies to all civil actions, not
merely antitrust actions, because it is an
interpretation of Rule 8. Id. at 1953.

The Eleventh Circuit has made clear that it remains the law that

on a Rule 12(b)(6) motion to dismiss the pleadings are construed broadly, and

the allegations in the complaint are viewed in the light most favorable to the

plaintiff. Watts v. Florida International University, 495 F.3d 1289, 1295 (11th

Cir. 2007).

III.

The plaintiff's sole claim against defendants Omni and VICIS

is that they breached their fiduciary duties to RETV. The elements of a

breach of fiduciary duty claim under Florida law, which the parties appear to

agree applies here, are "the existence of a fiduciary duty, and the breach of

that duty such that it is the proximate cause of the plaintiff's damages."

Gracey v. Eaker, 837 So.2d 348, 353 (Fla. 2002).

Significantly, in the New York action, the "Plaintiff concede[d] that Omni and Vicis <u>do not</u> directly owe any fiduciary duty to RETV" (Doc. 34-4, p. 6 (emphasis added); <u>see also id.</u>, p. 17). Furthermore, the plaintiff has not alleged in the amended complaint additional probative facts that would change this conclusion. Thus, after viewing the well-pled facts in the light most favorable to the plaintiff, the plaintiff's previous conclusion that Omni and VICIS did not owe RETV a fiduciary duty is correct.

"A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation." <u>Restatement (Second) of Torts</u>, §874, comment a; <u>Wachovia Ins. Services, Inc.</u> v. <u>Toomey</u>, 994 So.2d 980, 998 (Fla. 2008) (in a fiduciary relationship "one person is under a duty to act for the benefit of another on matters within the scope of the relationship").

A fiduciary relationship may be either express or implied. <u>Hogan</u> v. <u>Provident Life and Acc. Ins. Co.</u>, 665 F.Supp.2d 1273, 1287 (M.D. Fla. 2009); <u>Maxwell</u> v. <u>First United Bank</u>, 782 So.2d 931, 933 (Fla. App. 2001). Express fiduciary relationships are created by contract, such as

principal/agent, or can be created by legal proceedings, as in the case of a guardian/ward. Maxwell v. First United Bank, supra.

Implied fiduciary relationships "are premised upon the specific factual situation surrounding the transaction and the relationship of the parties" and exist where "confidence is reposed by one party and a trust accepted by the other." Hogan v. Provident Life and Acc. Ins. Co., supra, 665 F.Supp.2d at 1287. Thus, the en banc Eleventh Circuit has explained:

> In order to establish a fiduciary relationship, there must be an allegation of dependency by one party and a voluntary assumption of a duty by the other party to advise, counsel and protect the weaker party. Stated differently, "the fact that one party places its trust in the other does not create a confidential relationship in the absence of some recognition, acceptance, or undertaking of the duties of a fiduciary on the part of the other party."

Motorcity of Jacksonville, Ltd. by and through Motorcity of Jacksonville, Inc. v. Southeast Bank, N.A., 83 F.3d 1317, 1339 (11th Cir. 1996)(en banc) (citations omitted).[5]   The plaintiff argues that an implied fiduciary relationship was created in this case, whereby Omni and VICIS agreed to act

---

[5]To the extent that VICIS argues that acceptance of the duty needs to be verbally expressed (see Doc. 34, p. 5), the caselaw is clear that acceptance of an implied fiduciary duty may also arise based on a course of conduct. See, e.g., Barnett Bank of West Florida v. Hooper, 498 So.2d 923 (Fla. 1986); Capital Bank v. MVB, Inc., 644 So.2d 515 (Fla. App. 1994).

for RETV's benefit, based upon (1) Omni's and VICIS's ownership and control over RETV, and (2) Chris Phillips's relationship with RETV (Doc. 39, p. 5).

A fiduciary relationship involves parties of different strengths. Thus, a fiduciary is a party who is stronger, or in some way superior, due to circumstances such as expertise, experience, or information. A fundamental flaw in the plaintiff's claim of a fiduciary relationship is the failure to allege facts showing that RETV was weaker than, or in some way inferior to, Omni and VICIS. The amended complaint alleges that RETV had been publicly listed on the London Stock Exchange and subsequently moved to the AIM (Doc. 29, ¶4). It alleges further that, before RETV's suspension from the AIM, it had a total value of $61 million (id., ¶44). These circumstances do not indicate that RETV was a weaker party in need of advice, counsel, and protection from Omni and VICIS.

Furthermore, it seems anomalous that the amended complaint alleges that there were fiduciaries on both sides of the relationship. Thus, the amended complaint alleges that the Harringtons, who were the CEO and COO of RETV, were fiduciaries and breached their duty to RETV, while it also alleges that Omni and VICIS were fiduciaries of RETV. The plaintiff has

cited no authority supporting the idea that there can be fiduciaries on both sides of a fiduciary relationship. In that circumstance, which side is to advise, counsel, and protect the other? It makes more sense for the plaintiff to claim that Omni and VICIS aided and abetted the Harringtons in their breach of a fiduciary duty. However, the plaintiff tried that claim and it was rejected by Judge Fried.

Not only does the assertion of a fiduciary relationship seem implausible, the vague and general allegations of the amended complaint do not show otherwise. The plaintiff alleges that, as significant shareholders in RETV, Omni and VICIS had control and influence over RETV that created a fiduciary relationship (id., ¶¶ 17, 18, 21, 50). The amended complaint alleges that Omni had a 17% stake in RETV and that VICIS had 250,000 RETV shares (id., ¶¶ 10, 16). VICIS states that this amounted to .227% ownership in RETV and that its indirect investment in RETV, based on its 75% ownership of Omni common stock, was 12.75% (Doc. 34, pp. 7, 8).

Aside from the fact that VICIS's investment in RETV does not even amount to a quarter of one percent, the plaintiff has not cited any legal authority which imposes a fiduciary duty upon an entity or person solely based upon an investment in a company (regardless of whether the investment

is small or large). Thus, as VICIS points out, accepting this contention would implausibly render all investors fiduciaries of the companies in which they invested (id., pp. 7-8).

The plaintiff does not press this contention in its opposition argument, and instead argues that VICIS and Omni were "not mere 'hands off' investor[s] with regard to RETV....[but rather] both Omni [and] Vicis had significant involvement with RETV...through its own managing director Chris Phillips's repeated dealings with RETV" (Doc. 39, p. 16). However, the plaintiff has failed to allege sufficient facts from which it can plausibly be inferred that Phillips's actions created a fiduciary relationship.

Phillips was, at all relevant times, an Omni director and, in January 2008, became the managing director at VICIS (Doc. 29, p. 7). Therefore, the plaintiff contends that Phillips's actions are attributable to Omni and VICIS.

The plaintiff's reliance upon the actions of Phillips to establish a fiduciary relationship with Omni and VICIS reflects the weakness of the claim. Notably, the plaintiff does not allege that Phillips himself is a fiduciary. It did at one time, but it dismissed him from the suit.

Furthermore, Phillips's role as a director of Omni does not plausibly provide a basis for inferring that Omni voluntarily accepted a duty to advise, counsel, and protect RETV. While Phillips's role as managing director of VICIS puts him in a position to do that, Phillips, according to the amended complaint, was the person who first alerted RETV officials to the Harringtons' conduct (Doc. 29, ¶27). Moreover, the claim against VICIS, which was merely an indirect, and a small direct, shareholder of RETV, is clearly the weaker of the two. As a shareholder, VICIS stood to lose by a breach of fiduciary duty without any prospect of something to gain.

Under the circumstances, the plaintiff has not alleged a plausible claim that either Omni or VICIS had a fiduciary relationship with RETV. The conclusion is confirmed by an assessment of the allegations the plaintiff has made regarding Phillips.

It is undisputed that Phillips never held a position with RETV. Thus, Phillips was never an officer, director, or an employee of RETV and, therefore, Phillips never owed an express fiduciary duty to RETV. Rather, the plaintiff alleges that, based on Phillips's conduct, an implied fiduciary relationship arose between Omni or VICIS and RETV. The plaintiff must therefore allege sufficient facts to show that Phillips voluntarily accepted an

obligation by one of those defendants to act in RETV's benefit through Phillips's "recognition, acceptance, or undertaking of the duties of a fiduciary." <u>Motorcity of Jacksonville, Ltd. by and through Motorcity of Jacksonville, Inc.</u> v. <u>Southeast Bank, N.A.</u>, <u>supra</u>, 83 F.3d at 1339. The plaintiff alleges that the following circumstances created the implied fiduciary relationship (<u>see</u> Doc. 29, ¶¶ 22-24):

- RETV consulted with Phillips on several RETV deals and shared with Phillips confidential unpublished financial, trading, and business information that was not shared with other RETV shareholders;

- RETV consulted with Phillips on stock incentive plans for RETV management; and

- Phillips introduced business contacts to RETV.

The defendants persuasively argue that the plaintiff's vague and general allegations of a business relationship between Phillips and RETV do not state a fiduciary relationship. For example, the plaintiff does not allege when these deals took place, and for whom Phillips was acting at the time.

Moreover, the plaintiff does not identify the nature of the confidential information that was disclosed to Phillips. From all that appears, Omni and RETV were engaged in arms-length business deals and the information was pertinent to those deals, but confidential to outside parties.

Thus, a reasonable alternative inference is that the parties were just engaging in ordinary business deals that did not involve a fiduciary relationship. The Supreme Court indicated in Iqbal and Twombly that, where there is an alternative inference of permissible conduct, allegations that are merely consistent with liability are insufficient. 678 U.S. at 557, 550 U.S. at 557; see also American Dental Association v. Cigna Corporation, supra, 605 F.3d at 1290.

In addition, not only is the allegation of RETV's disclosure of confidential information to Phillips insufficient to show that RETV reposed trust in Phillips, it also does not indicate that Phillips voluntarily accepted on behalf of a defendant a duty to act for the benefit of RETV. See Jaffe v. Bank of America, N.A., 395 Fed.Appx. 583, 590 (11th Cir. 2010)("One may not unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary."). Similarly, the plaintiff's allegations that Phillips "consulted" with RETV concerning "several business deals," and introduced business contacts to RETV, lack factual specificity from which it can plausibly be concluded that Phillips thereby "recogni[zed] accept[ed] or undert[ook] the duties of a fiduciary." Motorcity of Jacksonville, Ltd. by and through Motorcity of

Jacksonville, Inc. v. Southeast Bank, N.A., supra, 83 F.3d at 1339. Rather, these vague allegations are simply consistent with Phillips giving RETV business advice, and networking.

The mere giving of advice and guidance does not establish a fiduciary relationship since, among other things, it does not mean that a person has accepted an obligation to protect and act on the other party's behalf. See, e.g., Lanz v. Resolution Trust Corp., 764 F. Supp. 176, 179-80 (S.D. Fla. 1991); Tippens v. Round Island Plantation L.L.C., 2009 WL 2365347 at *12 (S.D. Fla. 2009)(unpub. dec.); see also Motorcity of Jacksonville, Ltd. by and through Motorcity of Jacksonville, Inc. v. Southeast Bank, N.A., supra, 83 F.3d at 1339-40. Although the plaintiff argues that Phillips's advice was not given in the context of an arms-length relationship (see Doc. 39, p. 18 n.5), there are no specific factual allegations in the amended complaint that support that argument.

The plaintiff also relies upon statements made by Omni in public filings with the Securities and Exchange Commission that Omni, based on its voting control and representation on the board of directors, had "the ability ... to exercise significant influence over the operating and financial policies

of" RETV (Doc. 29, ¶17). However, these comments do not show the existence of a fiduciary relationship.

To start with, they are devoid of any facts. Further, they were not made between the parties. Consequently, they do not demonstrate either that RETV placed its trust in Omni, or that Omni voluntarily assumed the duty to "advise, counsel and protect" RETV. Moreover, <u>Motorcity of Jacksonville, Ltd. by and through Motorcity of Jacksonville, Inc.</u> v. <u>Southeast Bank, N.A., supra,</u> 83 F.3d at 1339-40, shows that one party does not become a fiduciary simply because it has the ability to significantly influence another party. Accordingly, Omni's statements in SEC filings do not meaningfully advance the plaintiff's claim of a fiduciary relationship.

In sum, because the plaintiff has not stated sufficient facts from which it can plausibly be inferred that Omni or VICIS had a fiduciary relationship with RETV, the plaintiff's breach of fiduciary duty claim against these defendants will be dismissed.

The corporate defendants raise three more challenges to the amended complaint. Those contentions do not require extended discussion.

VICIS persuasively argues as a second basis for dismissal that the plaintiff has not alleged facts establishing that VICIS breached any

purported duty to RETV. In this regard, the plaintiff bases its breach of fiduciary duty claim on Omni's and VICIS's alleged failure to cooperate with the investigation, and their failure to "direct the Harringtons to cooperate with the Investigation" (Doc. 39, pp. 18-19).

This contention further underscores the deficiency in the allegations of a fiduciary relationship. A breach of a fiduciary duty requires a showing that the fiduciary violated a duty within the scope of the relationship. See Restatement (Second) of Torts,§874, comment a. The amended complaint does not allege facts demonstrating that, even if a fiduciary relationship were properly alleged, the scope of that relationship included a duty to cooperate with RETV's investigation of itself, or a duty to force the Harringtons to cooperate with the RETV investigation.

Furthermore, the contention that VICIS (or Omni) breached a fiduciary duty regarding cooperation with the investigation of the Harringtons is implausible because that would mean that Omni and VICIS purposefully harmed themselves as well. Thus, as VICIS points out, if the Harringtons did use RETV funds for personal expenses and as kickbacks, a portion of those funds were VICIS's, and when RETV's shares were rendered worthless, so was VICIS's investment in RETV (Doc. 34, p. 12). Omni similarly argues that

it had invested a significant amount of money in RETV and had no interest in seeing it collapse.

In addition, the plaintiff does not adequately allege facts supporting the conclusory contention that VICIS refused to cooperate with the investigation. Thus, the plaintiff weakly relies upon Phillips's rejection of a request for a third meeting in four days, and some missed cellular telephone calls, to show that Phillips failed to cooperate with RETV's investigation (Doc. 29, ¶¶ 34, 35). VICIS correctly characterizes these allegations as trivial (Doc. 34, p. 11). They do not show that Phillips withheld relevant information or stonewalled investigatory efforts. Further, Phillips's warnings to RETV about the Harringtons, and his attendance at meetings with Goodman regarding the investigation, contradict the conclusory allegation that Phillips failed to cooperate with the investigation. Additionally, the plaintiff alleges no facts in support of its contention that it had the power, or right, to make the Harringtons cooperate with the investigation.

Although not the focus of the complaint, the plaintiff also alleges that Omni and VICIS breached a duty to RETV by continuing to communicate, and do business deals with, the Harringtons (Doc. 39, p. 19).

Similar to the other claims, there are insufficient facts to show that their communications and business dealings breached any purported fiduciary duty. Moreover, unlike the claim of lack of cooperation, the plaintiff does not allege that any damage was caused to RETV from communications and business deals with the Harringtons (Doc. 29, ¶52).

Omni also argues that the plaintiff's amended complaint does not allege the essential element that Omni's conduct proximately caused RETV's damages (Doc. 36, pp. 17-19). Omni has clearly raised a legitimate question. Thus, the plaintiff seems to allege that, because the Harringtons did not cooperate with the investigation, an audit was required that RETV could not afford; because the audit was not performed, trading in RETV's shares on the AIM was suspended; and because the trading of its shares was suspended, they became worthless (see Doc. 29, ¶44).

However, the vagaries of proximate cause ordinarily present a question of fact, and cannot be resolved as a matter of law. McDonald v. Florida Dept. of Transportation, 655 So.2d 1164, 1168 (Fla. App. 1995). This case does not appear to be the exception, particularly since, as the plaintiff points out, Omni, in a lawsuit it filed in New York, indicated that it was

foreseeable that the investigation and accounting discrepancies could result in RETV's stock becoming worthless (Doc. 39, p. 21).

Omni also argues as a ground for dismissal that the plaintiff's breach of fiduciary duty claim is barred by res judicata (Doc. 36, p. 2). This contention is not meritorious because there was not a final judgment on the merits of this matter.

A federal court must accord the same preclusive effect to a state court order or judgment that the state court itself would give. See Brown v. R.J. Reynolds Tobacco Co., 611 F.3d 1324, 1331 (11th Cir. 2010). When a federal court is requested to give res judicata effect to a state court judgment, the federal court must apply the law of the state where the judgment was rendered to determine the preclusive effect of such judgment. Kizzire v. Baptist Health Sys. Inc., 441 F.3d 1306, 1308 (11th Cir. 2006). Since this matter involves the preclusive effect of a New York judgment, New York law applies.

Under the doctrine of res judicata, a final judgment on the merits rendered by a court of competent jurisdiction generally bars a subsequent action between the same parties on the same cause of action. Matter of Neita W. v. Canute W., 453 N.Y.S.2d 278, 280-81 (Bronx Co. Ct. N.Y., 1981).

Additionally, New York courts adopt a transactional approach to res judicata, holding that "all other claims arising out of the same transaction or series of transactions are [also] barred, even if based upon different theories or seeking a different remedy." Feigen v. Advanced Capital Mgt. Corp., 146 A.D.2d 556, 558 (Sup. Ct. App. Div. N.Y., 1989).

In this case, although the legal theories are different, the factual circumstances underlying both claims are essentially the same. Thus, the crux of both complaints is that Omni's and VICIS's alleged lack of cooperation regarding the investigation into the Harringtons' alleged misappropriation of RETV funds and self-dealing led to the collapse and dissolution of RETV. Further, the allegations in each complaint mirror each other to a great extent. Thus, it is clear that this, and the New York action, arise from the same series of transactions, and that the claim alleged here could have been brought in the New York lawsuit. Furthermore, at the hearing, the plaintiff did not dispute this contention.

Rather, the plaintiff controverts that Judge Fried's Orders in the New York action constituted final judgments on the merits of its case (Doc. 39, p. 6). This contention is persuasive.

Judge Fried issued two Orders in the New York action. The first Order, dated October 25, 2010, dismissed the plaintiff's complaint against Omni, VICIS, and Phillips for failure to state a claim (Doc. 34-2). Attached to the memorandum Order is a cover sheet which identifies the parties and states that the "motion is decided in accordance with the attached memorandum decision" (id., p. 2). The cover sheet is signed and dated by Judge Fried, and below his signature is an option to check the box "FINAL DISPOSITION" or "NON-FINAL DISPOSITION" (id.). The box labeled "NON-FINAL DISPOSITION" is marked with an X (id.).

On June 28, 2011, Judge Fried issued another Order in that case which denied the plaintiff's motion to amend the complaint (Doc. 34-4). In doing so, Judge Fried stated: "because the Plaintiff failed to set forth facts necessary in showing that Omni and VICIS substantially assisted the Harringtons' lack of cooperation with the investigation, the Plaintiff's motion to amend the complaint must be denied" (id., p. 18). Similar to the previous Order, there was a cover sheet attached to the decision, signed and dated by Judge Fried, in which the box labeled "NON-FINAL DISPOSITION" was checked (id., p. 2).

Under New York law, "a judgment dismissing a cause of action before the close of the proponent's evidence is not a dismissal on the merits unless it specifies otherwise...." Iwachiw v. New York City Bd. of Educ., 194 F.Supp.2d 194, 203 (E.D.N.Y. 2002); quoting N.Y. C.P.L.R. §5013 (McKinney 2002); Matter of Neita W. v. Canute W., supra, 453 N.Y.S.2d at 280-81. Accordingly, "a judgment dismissing a complaint for failure to state a cause of action is not given res judicata effect unless the judgment specifies that it is on the merits." Iwachiw v. New York City Bd. of Educ., supra.

Therefore, neither of Judge Fried's Orders would ordinarily be considered a judgment on the merits. Further, neither Order specified that it was "on the merits," and there is nothing in the Orders which compels a different conclusion. Moreover, if there was any doubt, Judge Fried, having the opportunity to state whether it was a final or non-final disposition, specifically marked "NON-FINAL DISPOSITION" for both Orders (Doc. 34-2; Doc. 34-4, p. 2). Consequently, res judicata does not apply.

In sum, the plaintiff's amended complaint will be dismissed as to Omni and VICIS because it does not state sufficient facts showing a fiduciary relationship between RETV and Omni or VICIS, or that VICIS breached a purported fiduciary duty to RETV. Furthermore, the dismissal

will be with prejudice, as this is the plaintiff's third failed attempt to plead a viable claim against these defendants.

For the foregoing reasons, it is:

ORDERED:

That Defendant VICIS Capital Master Fund and Vicis Capital, LLC's Dispositive Motion to Dismiss (Doc. 34) and Defendant, Omni's, Motion to Dismiss Amended Complaint (Doc. 36) be, and the same are hereby, **GRANTED**, and the claim against those defendants is **DISMISSED** with prejudice.

DONE and ORDERED at Tampa, Florida, this /7ᵗʰ day of May, 2012.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE